## ECLIPSE MACH. CO. et al. v. HARLEY–DAVIDSON MOTOR CO. et al.

(Circuit Court of Appeals, Third Circuit. January 5, 1923.)

No. 2344.

1. **Equity ☞447(1)—Applications for bill of review for newly discovered evidence not favored.**

Applications to the appellate court for permission to apply to the lower court for leave to file a bill of review based on newly discovered evidence, after reversal of a decree below and issuance of mandate, are not favored by courts, and are subjected to the closest scrutiny.

2. **Equity ☞447(2, 4)—To warrant bill of review, new evidence must be of decisive character, and not discoverable before trial by exercise of diligence.**

An application for bill of review, on 'the ground of newly discovered evidence after an adverse decision on appeal, must show that the evidence could not with reasonable diligence have been discovered and produced at the trial, and that it is of a character sufficiently decisive on the merits to move the court in its discretion.

3. **Equity ☞447(4)—Courts are slow to grant application for review for evidence from government archives.**

When the new evidence relied on by an applicant for bill of review consists of record evidence drawn from the archives of the government, which might as easily have been found when the controversy arose as after its decision, courts are slow to grant the application.

4. **Equity ☞447(4)—Newly discovered evidence of prior publication are subject to strict enforcement of rule of diligence.**

Where an applicant seeks a bill of review after an adverse decision in a suit for the infringement of a patent, on the ground of newly discovered evidence, which consists of government records accessible to diligent search, and which is claimed to be a publication anticipating the patent in suit, the rule requiring diligence is strictly enforced.

5. **Equity ☞447(4)—Diligence held not shown to discover evidence that British patent had been published before its sealing date.**

Where, in a patent infringement suit, defendant relied on a British patent as anticipation, but plaintiff established his conception prior to the sealing date of such patent, and his application within two years thereof, newly discovered evidence that the British patent had been published prior to its sealing date, and more than two years before the application for the patent in suit, would have been discovered by defendant by the exercise of due diligence in the examination of the government records, and of British patent records kept in public libraries, so that such evidence does not entitle defendant to bill of review after adverse decision on appeal.

On Petition for Leave to File Bill in the Nature of a Bill of Review in the District Court of the United States for the Eastern District of Pennsylvania, and for Rehearing; Oliver B. Dickinson, Judge.

Suit by the Eclipse Machine Company and another against the Harley-Davidson Motor Company and another for infringement of patents. Decree for defendants (244 Fed. 463), was reversed on appeal by plaintiffs (252 Fed. 805, 164 C. C. A. 645), and defendants move

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to present a petition for leave to file a bill in the nature of a bill of review and for a rehearing. Petition denied.

Melville Church and William S. Hodges, both of Washington, D. C., Cyrus N. Anderson, of Philadelphia, Pa., and Edwin B. H. Tower, Jr., of Milwaukee, Wis., for petitioners.

Archibald Cox and Robert W. Byerly, both of New York City, and C. L. Sturtevant, of Washington, D. C., opposed.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. On appeal this court, reversing the decree of the District Court (244 Fed. 463), found certain claims of Letters Patent No. 1,018,890 and No. 1,071,992 valid and infringed (252 Fed. 805, 164 C. C. A. 645). These patents are known in this litigation as Ellett's second and third patents. Following the mandate and the reformation of the decree below, the case went to an accounting, which is still in progress. The defendants now ask this court for permission to apply to the District Court for leave to file a bill in the nature of a bill of review based on newly discovered evidence. John Simmons Co. v. Grier Bros., 258 U. S. 82, 42 Sup. Ct. 196, 199; Birdsboro Steel Co. v. Kelley Bros., 147 Fed. 713, 78 C. C. A. 101.

Dates which become pertinent on this application are these: This action was brought in the District Court in October, 1914; the evidence was concluded in February, 1916; and the decree was entered in August, 1917. The case was heard on appeal, decided and remanded in July, 1918. The evidence on which this application for review is based was discovered in December 1921 or January 1922.

[1, 2] The span of this litigation—not yet reached—brings to mind the law governing the opening of causes closed by decrees and the granting of new trials on the ground of newly discovered evidence. For reasons which are quite obvious, applications of this kind, involving not infrequently belated attempts to escape the consequences of adverse decisions, are not favored by courts and are, accordingly, subjected to the closest scrutiny. One seeking this relief is confronted with the presumption that the decree is correct and has the burden of showing that his claimed after-discovered evidence could not have been discovered before the trial and there produced. It is not every piece of evidence that comes to the knowledge of the losing party after decree that constitutes after-discovered evidence on which may be based a valid application for leave to file a bill of review. It is only evidence that has come to light under circumstances which show that it could not with reasonable diligence have been discovered and produced at the trial, and then only if it is of a character sufficiently decisive on the merits to move the court in its discretion. Bennett v. Schooley, 77 Fed. 352 (C. C., W. D. of Pa.); Hitchcock v. Tremaine, 9 Blatchf. 550, Fed. Cas. No. 6,540; Reeves v. Bridge Co., 2 Ban. & A. 256, Fed. Cas. No. 11,661; Baker v. Whiting, 1 Story, 218, Fed. Cas. No. 786; 20 R. C. L. 289–300, and cases.

[3, 4] When the new matter relied upon consists of record evidence drawn from the archives of the government, which might as easily have been found at the time the controversy arose as after its decision, courts are slow to grant the application. Dumont v. Des Moines Val-

ley R. R. Co., 131 U. S. clx, Appendix, 25 L. Ed. 520. And when, in a patent action, such record evidence, accessible to search if diligently made, is sought to be introduced as an anticipatory publication, the general interests of litigation require strict enforcement of the rule. "As there is no limit to the amount of published material, there would otherwise be no end to the number of applications of this character which might be made, one after another." In re Gamewell Fire-Alarm Tel. Co., 73 Fed. 908, 914, 20 C. C. A. 111, 117.

[5] Without expressing an opinion on the materiality of the newly discovered evidence to the issue of validity of the patents in suit, we shall, in the light of the law we have stated, review the facts involved in its discovery. They are as follows:

At the trial the defendants introduced, among others, British Patent No. 1507, 1908, to Archibald Sharp as an anticipation of the patents in suit. This patent was considered and discussed by experts of the respective parties for and against its claimed anticipation. The parties stipulated that the sealing date of this patent was April 22, 1909, and it was proved that the invention disclosed by Ellett's second patent was made as early as May, 1908. The sealing date of the Sharp patent was therefore subsequent to Ellett's invention and less than two years prior to the application of Ellett's second patent, February 16, 1911. R. S. 4886, Comp. St. § 9430. It was, however, more than two years prior to the application date of Ellett's third patent, April 15, 1912. Since the trial the defendants have discovered that prior to February 16, 1909 (the filing date of Ellett's second patent), the Birmingham Public Libraries, Birmingham, England, and the Manchester Reference Library, Manchester, England, each received and had open to the public a printed copy of the Sharp application, which eventually became the British patent to Sharp, sealed and granted April 22, 1909, and that on February 11, 1909, the British Patent Office, London, England, had printed copies of the patent on sale. Therefore, the defendants claim that these copies describe the same clutch as is claimed in Ellett's Letters Patent and constitute an anticipation of Ellett's invention, not as a prior patent but as a prior publication. This is the after-discovered evidence on which they base their application for leave to file a bill of review.

Assuming for the moment that these allegations are true, the relief which the defendants seek turns primarily on the method by which they made their discovery and on the related circumstances which, under the law, must show no lack of diligence on their part in not finding the evidence earlier.

As to the circumstances under which this discovery was made the defendants say that in December, 1921, they were informed unexpectedly that the printed copy of the Sharp patent in the Bound Volume of British Patents in the United States Patent Office was stamped March 2, 1909. Realizing the implication of this stamped date, they immediately instituted an investigation abroad which produced the information stated. They were not able, however, to obtain from the British Patent Office any information as to sale and distribution of copies of the Sharp patent prior to February 16, 1909, or from Sharp himself as to the use of the publication before that date.

The defendants excuse themselves for any lack of diligence in not finding the Sharp patent (with its significant stamped date) in the Books of British Patents in the United States Patent Office at the time of trial by asserting that searches for British patents are made in the British Abridgements in which patents are classified, not in the Books of British Patents in which patents are unclassified. It was in these books that the Sharp patent, bearing the stamped date of its receipt, was finally found. But this does not explain why the defendants could not have discovered the patent with the stamped date, indicating an earlier date of publication, seven years before when the action was brought, or five years earlier when the evidence was concluded, or why they could not have found the publication date of the Sharp specification through other channels leading to the same evidence. For instance: There is kept on file in the United States Patent Office (and also in the New York Public Library) a periodical publication entitled "The Illustrated Official Journal (Patents)" issued weekly by the British Patent Office. This publication is divided into two parts,—Abridgements and Proceedings, the former containing a summary of the specifications of British patents, the latter a record of the proceedings in the British Patent Office including the dates on which the specifications were published, and the dates, invariably later, on which the patents were sealed. Copies of these publications covering the dates in issue were on file at the places named available for use by the public. Moreover, the printed copy of the Sharp patent, put in evidence by the defendants at the trial, gave the date of acceptance of the completed specifications as January 21, 1909. As the British Patents and Designs Act (7 Edw. VII, c. 29, § 80) requires printed copies of specifications to be transmitted to specified public offices within twenty-one days after acceptance (that is, by February 11, 1909 in the case of the Sharp patent), we are inclined to believe that the acceptance date printed on the Sharp patent was notice to one familiar with British patents that the Sharp specification was printed and published close to, if not before, February 16, 1909. Furthermore, it is commonly known that British patents are published and placed on sale by the British Patent Office before the patent documents are sealed. As the parties had stipulated that April 22, 1909, was the sealing date of the Sharp patent, that date was sufficiently close to the crucial date of February 16, 1909 (the date of the Ellett application), to suggest inquiry of the publication date of the specification of the Sharp patent relied upon now as an anticipation. Still further, it occurs to us that the defendants ascertained somehow the sealing date of the Sharp patent before they entered into the stipulation. Although they have not indicated the source of this information, it is highly probable they might have gotten it, as certainly they could have gotten it, from the "Proceedings" part of The Illustrated Official Journal which contained the publishing date of the specification as well.

Tested by the standard which the law imposes in such cases, we are of opinion that the facts on which this application is rested do not disclose that diligence which the law requires of one seeking relief by a bill of review. Accordingly, the petition is denied.